UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| STEVEN GOMO, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>NETAPP, INC.,<br><br>    Defendant. | Case No. 17-cv-02990-BLF<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**<br><br>[Re: ECF 9] |

Plaintiffs are former employees of Defendant NetApp, Inc. who participated in NetApp's Executive Medical Retirement Plan ("Plan"), a welfare benefit plan governed by ERISA.[1] The Plan, which was offered only to top executives, provided "lifetime" medical benefits for the executives and their families. NetApp amended the Plan in 2016 to eliminate the lifetime benefits provision. Plaintiffs claim that NetApp lacked authority to amend the Plan and they seek a determination that they are entitled to lifetime benefits under the Plan. Alternatively, Plaintiffs claim that NetApp breached its fiduciary duties by misrepresenting the terms of the Plan.

NetApp moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6).

The motion is DENIED for the reasons discussed below.

## I. BACKGROUND[2]

Plaintiffs Steven Gomo, Richard Clifton, Edward Deenihan, Daniel Warmenhoven, Robert Salmon, Tom Gerstenberger, and Tom Georgens all held senior executive positions at NetApp at the Executive Vice President level or above. Compl. at p.1, ECF 1. In approximately 2005, NetApp created the Plan as a special incentive for senior executives to continue working for

---

[1] Employee Retirement Income Security Act of 1974.

[2] The background facts are drawn from Plaintiffs' factual allegations, which are accepted as true for purposes of evaluating NetApp's motion to dismiss. *See Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).

NetApp. *Id.* One of the chief benefits of the Plan was the promise of "lifetime" medical benefits for the executives, their spouses, and their children under the age of twenty-six. *Id.* at p.2.

NetApp was both the Plan sponsor and the Plan administrator, and therefore it was a fiduciary of the Plan under ERISA. Compl. ¶ 1. NetApp gave several of the Plaintiffs a PowerPoint presentation regarding the Plan when they became eligible to participate and all Plaintiffs were given a copy of the PowerPoint presentation slides as the Plan document. *Id.* ¶¶ 2-8. Versions of the PowerPoint presentation dated August 2009, February 2012, March 2013, and December 2015 are attached as exhibits to the complaint. Compl. Exhs. 1-4. Those documents explain the eligibility requirements and benefits of the "Executive Medical Retirement Plan" in bullet point form. *Id.* Nothing in those documents indicates that NetApp had authority to terminate the lifetime benefit provision, and NetApp never advised any of the Plaintiffs that the Plan could be modified to eliminate that provision. Compl. ¶¶ 2-8 & Exhs. 1-4. To the contrary, NetApp representatives orally informed several of the Plaintiffs that the Plan provided lifetime benefits. Compl. ¶ 10.

In the summer of 2016, NetApp decided to eliminate the lifetime benefit. Compl. ¶ 13. NetApp instead offered Plan participants a reimbursement of costs for insurance plans individually procured by each Plaintiff for a period of three years, and then a lump sum payment nominally equivalent to insurance costs for an additional two years. *Id.* Plaintiffs, through counsel, requested that NetApp provide any plan language permitting it to terminate the lifetime benefit. *Id.* ¶ 14. NetApp failed to provide any plan documents in effect at any time before 2016 showing that NetApp had reserved the right to terminate the Plan or to amend it to eliminate the lifetime benefit. *Id.* NetApp instead produced certificates of insurance which referred to the "Retiree Medical Plan," which Plaintiffs understand to be a plan separate from the "Executive Medical Retirement Plan" in which they were participants. *Id.* ¶ 15. Plaintiffs made a demand, through counsel, that NetApp continue the preexisting Executive Medical Retirement Plan. *Id.* ¶ 16. NetApp denied that demand. *Id.*

Plaintiffs filed this action on May 24, 2017, asserting two claims under ERISA: (1) a claim for benefits and clarification as to entitlement to future benefits under ERISA section

2

502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), and (2) a claim for breach of fiduciary duty under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). Plaintiffs seek all benefits due under the Plan prior to its amendment (Claim 1) or, alternatively, equitable relief including estoppel and/or plan reformation (Claim 2).

## II. LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III. DISCUSSION

### A. Claim 1 for Benefits under the Plan

In Claim 1, asserted under ERISA § 502(a)(1)(B), Plaintiffs seek all benefits due under the Plan prior to its amendment, specifically including lifetime medical benefits. Defendants move to dismiss Claim 1 on the basis that the operative Plan documents contain a reservation of rights permitting NetApp to amend or terminate the Plan.

"ERISA was enacted in 1974 to govern the administration of two kinds of employee benefit plans: welfare benefit plans and pension benefit plans." *Pisciotta v. Teledyne Indus., Inc.*, 91 F.3d 1326, 1329 (9th Cir. 1996). "Any plan or fund or program which an employer establishes

3

or maintains for the purpose of providing medical, surgical or hospital care or benefits to its participants or their beneficiaries is defined by ERISA as a welfare benefit plan." *Id.* Unlike pension benefit plans, welfare benefit plans are not subject to the statutory vesting requirements of ERISA. *Id.* 1330. Consequently, employers generally retain discretion to modify or terminate welfare benefit plans. *Id.*; *see also Cinelli v. Sec. Pac. Corp.*, 61 F.3d 1437, 1441 (9th Cir. 1995) ("Because benefits under a welfare plan are generally neither vested nor accrued, an employer may amend or terminate benefits pursuant to the terms of the plan at any time."). "It is accepted, however, that the parties may themselves set out by agreement or by private design, as set out in plan documents, whether retiree welfare benefits vest, or whether they may be terminated." *Cinelli*, 61 F.3d at 1441 (internal quotation marks and citation omitted). "A contractual agreement for vesting of benefits must be found in the plan documents." *Id.*

NetApp asserts that the PowerPoint presentation slides which are attached to the complaint and alleged to be the "plan document" are not actually the plan document. NetApp submits 973 pages of documents, consisting of multiple certificates of coverage and multiple group insurance policies, which NetApp contends constitute the governing plan documents. *See* Kang Decl. & Exhs. A-K, ECF 10. According to NetApp, those governing plan documents contain an express reservation of rights permitting NetApp to amend or terminate the Plan. The case law is clear that such a reservation of rights forecloses a claim for contractually vested benefits. *See, e.g., Pisciotta*, 91 F.3d at 1331.

The problem with NetApp's argument is that it depends on evidence extrinsic to the complaint. "In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). NetApp urges the Court to consider its evidence under the incorporation by reference doctrine. That doctrine allows a court to "consider documents in situations where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). To the extent any of the documents

4

submitted by NetApp are referenced in the complaint, the complaint expressly alleges that the documents do not relate to the Plan at issue. Compl. ¶ 15. Moreover, Plaintiffs do not concede the documents' authenticity, pointing out in the opposition brief that the documents are simply presented as attachments to the declaration of NetApp's counsel, who offers no foundation for her ability to authenticate them. Nor do Plaintiffs concede that the documents are, in fact, the governing plan documents. Consequently, the Court cannot consider the documents submitted by NetApp under the incorporation by reference doctrine.

The parties devote substantial argument to the issues of which documents govern and whether various documents satisfy ERISA's statutory requirements. These arguments present factual questions which are inappropriate for resolution on a motion to dismiss.

Accordingly, NetApp's motion to dismiss Claim 1 is DENIED.

### B. Claim 2 for Breach of Fiduciary Duty

In Claim 2, asserted under ERISA § 502(a)(3), Plaintiffs claim that NetApp breached its fiduciary duties "[b]y falsely representing the nature of benefits to be provided by [the Plan] if, in fact, they were not lifetime benefits but were subject to amendment or cancellation at the whim of the employer, NetApp." Compl. ¶ 24. Plaintiffs seek equitable relief for this alleged breach, including estoppel, injunctive relief, and/or reformation of the Plan. *Id.* ¶¶ 25-27. NetApp seeks dismissal of Claim 2 on the grounds that it is duplicative of Claim 1 and fails to state a claim.

#### 1. Duplicative

As noted above, Claim 1 is asserted under ERISA § 502(a)(1)(B), which permits a plan participant or beneficiary to bring suit "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Claim 2 is asserted under ERISA § 502(a)(3), which authorizes a civil action "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). "Section 502(a)(3) has been called a catchall provision, a safety net, offering appropriate equitable relief for injuries caused by

5

violations that § 502 does not elsewhere adequately remedy." *Bush v. Liberty Life Assurance Co. of Boston*, 77 F. Supp. 3d 900, 908 (N.D. Cal. 2015) (internal quotation marks and citation omitted).

"At the pleading stage, a plaintiff may assert section (a)(1)(B) and (a)(3) claims in the alternative if they are premised upon different theories of liability and plaintiff seeks alternative remedies. *Bush*, 77 F. Supp. 3d at 908. Here, Plaintiffs seek lifetime benefits under the Plan pursuant to § (a)(1)(B) and, alternatively, they seek reformation or other equitable relief pursuant to § (a)(3) in the event they are not entitled to lifetime benefits under the terms of the Plan. Reformation, one of the remedies sought under the § (a)(3) claim, is not available as a remedy under § (a)(1)(B). Accordingly, the Court concludes that at this early stage of the proceedings Plaintiffs may pursue alternative theories under Claims 1 and Claim 2. *See Bush*, 777 F. Supp. 3d at 908 (denying motion to dismiss § 502(a)(3) claim based on alleged miscommunication of plan terms as duplicative of § 502(a)(1)(B) claim).

### 2. Failure to State a Claim

NetApp next argues that Claim 2 fails to state a claim because Plaintiffs' allegation that NetApp promised them lifetime medical benefits is contradicted by the unambiguous written terms of the Plan. *See, e.g., Harris v. Ventyx Inc.*, No. CIV. S-11-308 FCD, 2011 WL 3584498, at *4 (E.D. Cal. Aug. 12, 2011) ("[C]ourts have held the oral agreements or modifications cannot be used to contradict or supersede the written terms of an ERISA plan."). This argument depends on the Court's acceptance of the documents submitted by NetApp as the governing plan documents. As discussed above, the Court cannot consider those documents at this stage of the proceedings.

Accordingly, NetApp's motion to dismiss Claim 2 is DENIED.

## IV. ORDER

Defendant's motion to dismiss is DENIED.

Dated: November 1, 2017

_____
BETH LABSON FREEMAN
United States District Judge