UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| STEVEN GOMO, RICHARD CLIFTON, EDWARD DEENIHAN, DANIEL WARMENHOVEN, ROBERT SALMON, TOM GERSTENBERGER, and TOM GEORGENS,<br><br>Plaintiffs,<br><br>v.<br><br>NETAPP, INC., a Delaware Corporation, and NETAPP, INC. EXECUTIVE RETIREE HEALTH PLAN,<br><br>Defendants. | Case No. 17-cv-02990-BLF<br><br>**ORDER DENYING DEFENDANT NETAPP, INC.'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Re: ECF 130] |

Defendant NetApp, Inc. seeks summary judgment on Plaintiff Daniel Warmenhoven's claim for breach of fiduciary duty in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"). The motion is DENIED for the reasons discussed below.

**I.  BACKGROUND**

*The Plan*

This suit arises from NetApp's termination of its Executive Medical Retirement Plan ("the Plan"), an employee welfare benefit plan governed by ERISA. *See* Compl., ECF 1. The Plan was created at the direction of NetApp's CEO, Warmenhoven. *See* Warmenhoven Decl. ¶ 2, ECF 139-2. The Plan provided post-retirement health insurance benefits to certain top NetApp executives, their spouses, and their children. *See* Saunders Decl. ¶ 3, ECF 132-5. As described in a PowerPoint presentation, the Plan was represented as conferring lifetime medical benefits for

senior executives and their spouses. *See* Warmenhoven Decl. ¶ 5 & Ex. 1. At the time the Plan was created, NetApp's intent was that the health insurance benefits would be provided for the lifetime of participating executives. *See* Correa Dep. 13:22-25, ECF 139-1.[1] The Plan was structured as a fully insured benefit, with the insurance company – initially CIGNA and later UnitedHealthCare ("UHC") – serving as both the underwriter and the administrator of benefits. *See* Saunders Decl. ¶ 3. NetApp paid all Plan premiums. *See* Warmenhoven Decl. ¶ 5, ECF 139-2. Marg Correa presented the Plan to the Compensation Committee, which adopted the Plan in 2005. *See* Correa Dep. 23:11-13, ECF 139-1; Warmenhoven Decl. ¶ 3.

The insurance company provided certificates of coverage, which NetApp treated as the Plan document. *See* Saunders Decl. ¶ 3. The certificates of coverage stated that NetApp, the Plan sponsor, could terminate the Plan at any time. *See* Correa Dep. 37:17-19, ECF 132-2. NetApp's authority to terminate the Plan was not made clear in PowerPoint presentations that were shown to participating executives. *See* Warmenhoven Decl. ¶¶ 5-8. Warmenhoven did not realize that NetApp had the legal right to terminate the Plan at any time.[2] *See id.*

*Termination of the Plan and Commencement of this Suit*

In 2016, the Compensation Committee decided to terminate the Plan. *See* Warmenhoven Decl. ¶ 9. NetApp announced that it would provide individual insurance policies for all Plan participants for a period of three years before ending the Plan completely in December 2019. *See* Warmenhoven Decl. ¶ 9. Warmenhoven and other executives believed that NetApp's decision to terminate the Plan violated ERISA. Warmenhoven and other executives ("Plaintiffs") filed this suit on May 24, 2017, asserting two claims under ERISA. *See* Compl., ECF 1. First, Plaintiffs asserted a direct claim for Plan benefits against both NetApp and the Plan under 29 U.S.C. § 1132(a)(1)(B). Second, Plaintiffs asserted an alternate claim for breach of fiduciary duty against NetApp under 29 U.S.C. § 1132(a)(3), seeking equitable relief on the theory that NetApp

---

[1] In his deposition, Warmenhoven characterized Marg Correa as the "core person" with respect to the design of the Plan, referring to her as "the quarterback" who "called the plays." Warmenhoven Dep. 62:15-18, 89:21-22, ECF 132-1.

[2] As discussed below, the Ninth Circuit has held that NetApp had the right to terminate the Plan at any time. *See Warmenhoven v. NetApp, Inc.*, 13 F.4th 717, 723-25 & n.1 (9th Cir. 2021).

1    incorrectly represented that the Plan provided lifetime health insurance benefits.

2        *This Court's Summary Judgment Order and Ninth Circuit's Remand*

3        This Court granted summary judgment for Defendants.  *See* Order Granting Defs.' Mot.
4    for Summary Judgment ("MSJ Order"), ECF 93.  On appeal by Plaintiff Warmenhoven, the Ninth
5    Circuit affirmed the judgment in part as to the direct claim for benefits under § 1132(a)(1)(B),
6    vacated the judgment in part as to the alternate claim for breach of fiduciary duty under §
7    1132(a)(3), and remanded to this Court for further proceedings.  *See Warmenhoven v. NetApp,*
8    *Inc.*, 13 F.4th 717, 729 (9th Cir. 2021).

9        In affirming the judgment on the direct claim for benefits under § 1132(a)(1)(B), the Ninth
10   Circuit noted that "the default rule under ERISA provides that welfare plans do not vest and can
11   be amended at any time."  *Warmenhoven*, 13 F.4th at 723.  "A plan may override this default rule,
12   but only if it does so expressly in a plan document," *id.*, meaning "a written instrument satisfying
13   the requirements of § 1102(b) – and not some other document," *id*. at 724.  The Ninth Circuit
14   determined that this Court correctly identified the written instrument governing the Plan as the
15   certificates of coverage, which stated expressly that the Plan could be terminated at any time.  *See*
16   *id.* at 725 n.1.  The Ninth Circuit also determined that "the PowerPoints did not form part of a
17   written instrument that could vest lifetime benefits."  *Id*.

18       In vacating the judgment on the alternate claim for breach of fiduciary duty under §
19   1132(a)(3), the Ninth Circuit determined that this Court erred in concluding that Warmenhoven
20   could not prevail on the first element of the claim.  *See Warmenhoven*, 13 F.4th at 725-26.  "A §
21   1132(a)(3) claim has two elements:  (1) that there is a remediable wrong, *i.e.*, that the plaintiff
22   seeks relief to redress a violation of ERISA or the terms of a plan; and (2) that the relief sought is
23   appropriate equitable relief."  *Id*. at 725 (internal quotation marks and citation omitted).  The Ninth
24   Circuit held that "Warmenhoven's fiduciary duty claim survives summary judgment on the
25   remediable wrong issue, as there is a genuine dispute of material fact as to whether NetApp
26   incorrectly represented to Plan participants that the Plan provided lifetime health insurance
27   benefits." *Id*. at 727-28.  Observing that this Court had not addressed the second element of the
28   claim, that the remedy sought is appropriate equitable relief, the Ninth Circuit held that "the

1  proper course is to allow the district court to consider in the first instance the merits of NetApp's

2  argument for summary judgment based on the remedy prong." *Id*. at 729.

*Current Motion*

After the Ninth Circuit's rulings, the only claim remaining in this case is Warmenhoven's § 1132(a)(3) claim against NetApp for breach of fiduciary duty. Consistent with the Ninth Circuit's guidance, this Court allowed NetApp to file a renewed motion for summary judgment on the second element of that claim, that the remedy sought is appropriate equitable relief. Following completion of briefing, the Court heard oral argument on October 13, 2022.

## II. LEGAL STANDARD

"A party is entitled to summary judgment if the 'movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *City of Pomona v. SQM North America Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). "The moving party initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Id*.

"Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial." *Oracle*, 627 F.3d at 387. "[T]he non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id*. "The court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor." *City of Pomona*, 750 F.3d at 1049. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id*. (internal quotation marks and citation omitted).

## III. DISCUSSION

NetApp argues that it is entitled to summary judgment on Warmenhoven's § 1132(a)(3) claim because he does not seek a remedy that constitutes appropriate equitable relief. "A claim

4

fails if the plaintiff cannot establish the second prong, that the remedy sought is appropriate equitable relief under § 1132(a)(3)(B), regardless of whether a remediable wrong has been alleged." *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 954 (9th Cir. 2014) (internal quotation marks and citation omitted). Warmenhoven contends that he seeks appropriate equitable relief under § 1132(a)(3).

In *Amara*, the Supreme Court identified three types of equitable relief that may be available under § 1132(a)(3): reformation, equitable estoppel, and surcharge. *See CIGNA Corp. v. Amara*, 563 U.S. 421, 440-42 (2011). The Ninth Circuit offered additional guidance regarding the scope of those remedies in *Gabriel*. *See Gabriel*, 773 F.3d at 955-58. NetApp contends that on the facts of this case, Warmenhoven cannot obtain reformation, equitable estoppel, or surcharge. In response, Warmenhoven argues that reformation and surcharge are available remedies for NetApp's alleged breach of fiduciary duty; he does not argue that equitable estoppel is an available remedy here. The Court addresses the parties' arguments regarding the availability of reformation and surcharge as follows.[3]

**A.    Reformation**

"First, appropriate equitable relief may include the reformation of the terms of the plan, in order to remedy the false or misleading information provided by a plan fiduciary." *Gabriel*, 773 F.3d at 955 (internal quotation marks and citation omitted). "The power to reform contracts is available only in the event of mistake or fraud." *Id*. Warmenhoven seeks reformation of the Plan based on mistake; he does not assert an entitlement to reformation based on fraud.

"A plaintiff may obtain reformation based on mistake in two circumstances: (1) if there is evidence that a mistake of fact or law affected the terms of [a trust] instrument and if there is evidence of the settlor's true intent; or (2) if both parties [to a contract] were mistaken about the content or effect of the contract and the contract must be reformed to capture the terms upon which the parties had a meeting of the minds." *Gabriel*, 773 F.3d at 955 (internal quotation marks

---

[3] NetApp also argues the unavailability of injunctive relief as a remedy under § 1132(a)(3)(B). The Court does not address that argument, as injunctive relief is not one of the three remedies discussed in *Amara* and *Gabriel*, and is not addressed by Warmenhoven.

1  and citation omitted, alterations in original).  To qualify for reformation of the Plan based on

2  mistake under these principles, Warmenhoven "would need to demonstrate that a mistake of fact

3  or law affected the terms of the Plan . . . and introduce evidence of [NetApp's] true intent."  *Id*.

4  (internal quotation marks and citation omitted).  As noted above, "the default rule under ERISA

5  provides that welfare plans do not vest and can be amended at any time."  *Warmenhoven*, 13 F.4th

6  at 723.  Thus, Warmenhoven would have to present evidence that NetApp's true intent was to give

7  up its legal right to amend the Plan at any time, and that the Plan's terms did not reflect that intent

8  due to a mistake on NetApp's part.

9        As the party moving for summary judgment, NetApp has the initial burden to prove that

10  Warmenhoven cannot make this showing.  NetApp submits evidence that the Plan document – the

11  certificates of coverage – expressly provided that NetApp could terminate the Plan.  *See* Correa

12  Dep. 37:17-19.  The Ninth Circuit has confirmed that the certificates of coverage "by themselves

13  qualified as the Plan's written instrument" and "expressly stated that the Plan could be terminated

14  at any time."  *Warmenhoven*, 13 F.4th at 725 n.1.  NetApp also points to the deposition testimony

15  of Correa, who was tasked with creating the Plan and who presented the Plan to the Compensation

16  Committee for approval.  *See* Correa Dep. 45:13-17, ECF 132-2.  Correa testified that the

17  members of the Compensation Committee were given the Plan documents.  *See id.* 39:4-6; 45:23-

18  46:10.  Correa also testified that, although she did not recall specifically advising the

19  Compensation Committee that NetApp had the right to terminate the Plan, she "would be

20  surprised if they didn't know that."  *Id*. 37:23-24.

21        This evidence strongly indicates that NetApp's right to terminate the Plan was known to

22  Correa, who created the Plan, and to the members of the Compensation Committee, who approved

23  the Plan on behalf of NetApp.  Nothing in this evidence suggests that Correa and the members of

24  the Compensation Committee intended that NetApp be stripped of that right, but mistakenly failed

25  to ensure that the Plan document reflected such intent.  The Court finds that NetApp has met its

26  initial burden on summary judgment.  The burden thus shifts to Warmenhoven to present evidence

27  from which a reasonable trier of fact could find that NetApp's true intent was to give up its default

28  right to terminate the Plan but mistakenly failed to include the language necessary to effectuate

that intent in the Plan document.

Warmenhoven argues that Correa's testimony that the Plan could be terminated at any time is contradicted by her testimony that the Plan provided an "unlimited lifetime maximum benefit." Correa Dep. 26:1-9, ECF 139-1.  This argument is unpersuasive, because Correa explained that the existence of an "unlimited lifetime maximum benefit" meant only that the Plan had no cap on the amount of benefits that were available over the participant's lifetime.  *See id.* 26:13-19.  She testified as follows:

> I was going to say this unlimited lifetime maximum is a benefit as part of the plan design; so you have out-of-pocket premiums that are paid in this plan.  Oftentimes a plan will have – it will say something like we won't pay any more than X number of dollars in your lifetime.  This plan had no maximum on that lifetime benefit.

*Id*.  Correa's testimony that the Plan did not cap the dollar amount of health insurance benefits available to each participant has no bearing on NetApp's legal right to terminate the Plan, and does not contradict Correa's testimony that the Plan could be terminated at any time.

Warmenhoven next argues that NetApp's true intent to give up its legal right to terminate the Plan may be inferred from the fact that senior NetApp management believed that the Plan could not be terminated.  Warmenhoven cites to his own declaration statements that he personally believed the Plan could not be terminated, that no one ever told him the Plan could be terminated, and that no one ever advised him that NetApp's right to terminate the Plan was grounded in ERISA law and the Plan document (the certificates of insurance).  *See* Warmenhoven Decl. ¶¶ 5-9.  At most, Warmenhoven's declaration evidences a unilateral mistake on his part regarding NetApp's right to terminate the Plan.  As discussed above, the members of the Compensation Committee had the final word on adopting or not adopting the Plan on behalf of NetApp.  There is no evidence that the members of the Compensation Committee were mistaken as to the Plan's terms, specifically, the Plan document's express confirmation of the default rule that NetApp could terminate the Plan at any time.

Finally, Warmenhoven cites to NetApp's SEC filings between 2010 and 2015 as evidence that NetApp intended that the Plan could not be terminated.  *See* SEC Filings, Martin Decl. ¶¶ 3-9 & Exs. 2-8.  Those filings disclosed that NetApp maintained a plan to provide post-retirement

7

health and welfare benefits to certain executives, and that the associated funding obligation had been classified as long-term liabilities in NetApp's balance sheets. *See id.* As discussed above, NetApp originally did intend that the Plan health benefits would be provided to participating executives for their lifetimes. The SEC filings reflected that original intent and classified the associated long-term funding liabilities. However, nothing in the SEC filings indicated that NetApp had given up, or had intended to give up, its legal right to terminate the Plan at any time. The SEC filings do not constitute evidence that NetApp was mistaken as to the Plan's terms.

Based on the foregoing, the Court finds that NetApp has met its initial burden to demonstrate that reformation is not an appropriate equitable remedy in this case, and Warmenhoven has failed to meet his burden to come forward with evidence from which a reasonable trier of fact could find that reformation is an appropriate equitable remedy.

### B. Surcharge

"[A]ppropriate equitable relief also includes surcharge." *Gabriel*, 773 F.3d at 957 (internal quotation marks omitted). Surcharge is "monetary compensation for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment." *Id.* (internal quotation marks and citation omitted). Under a breach of duty theory, "[t]he beneficiary can pursue the remedy that will put the beneficiary in the position he or she would have attained but for the trustee's breach." *Id.* at 958 (internal quotation marks and citation omitted). Under an unjust enrichment theory, "[a] trustee (or a fiduciary) who gains a benefit by breaching his or her duty must return that benefit to the beneficiary." *Id.* (internal quotation marks and citation omitted).

In this case, Warmenhoven claims that NetApp breached its fiduciary duty by incorrectly representing to Plan participants that the Plan provided lifetime health insurance benefits. The Ninth Circuit held that "[a] reasonable factfinder easily could read the PowerPoints to convey a promise of lifetime benefits." *Warmenhoven*, 13 F.4th at 728. In order to prevail on its summary judgment motion, NetApp must show that surcharge is not an appropriate remedy for this alleged breach of fiduciary duty, either as compensation for actual harm or disgorgement of unjust enrichment.

### 1. Compensation for Actual Harm

NetApp contends that Warmenhoven cannot show that he suffered any harm resulting from NetApp's alleged representation that the Plan conferred lifetime benefits. NetApp relies on two excerpts of Warmenhoven's deposition testimony and one response to a request for admission. *See* Mot. at 5, ECF 130. In the first deposition excerpt, Warmenhoven testified that although his eligibility to participate in the Plan as he understood it "was a comforting thought," his decision to retire when he did "was based on age and a desire to move on." Warmenhoven Dep. 130:23-131:7. Warmenhoven also stated that his goals in retirement were not affected by his participation in the Plan. *See id.* In the second deposition excerpt, Warmenhoven testified that the termination of the Plan did not affect his personal net worth. *See id.* 180:24-181:7. Finally, in his response to Request for Admission 12, Warmenhoven admitted that the offer of the Plan's benefits was not his main reason for retirement. *See* Kang Decl. Ex. C, ECF 132-3. NetApp argues that this evidence establishes that Warmenhoven's current position is no different than it would have been without the allegedly inaccurate PowerPoints. In *Skinner*, the Ninth Circuit found surcharge to be unavailable as a remedy for an allegedly misleading summary plan description ("SPD") where the plan participants had "not shown that their current positions are any different than they would have been without the inaccurate SPD." *Skinner v. Northrop Grumman Ret. Plan B*, 673 F.3d 1162, 1167 (9th Cir. 2012).

In the Court's view, NetApp's evidence is not sufficient to meet its initial burden on summary judgment. The evidence does show that Warmenhoven's expectation of lifetime health insurance benefits was not the main reason he retired when he did, and that Warmenhoven's retirement goals and personal net worth were not affected by termination of the Plan. However, it is quite a leap to say those facts establish that Warmenhoven's current position is no different today than it would have been without the alleged inaccurate promise of lifetime benefits. Warmenhoven was the CEO of NetApp and the Plan was created at his direction. Had he understood that NetApp retained authority to terminate the Plan at any time, he might have taken any number of actions, for example, proposing that the Plan be modified to limit NetApp's right to terminate it. The Court simply cannot conclude that the cited snippets of Warmenhoven's

deposition testimony and discovery responses negate the existence of any actual harm flowing from NetApp's allegedly misleading PowerPoint presentations.

Even if NetApp had met its initial burden, Warmenhoven has submitted evidence that creates a factual dispute as to whether the PowerPoint presentations caused him actual harm. He states in his declaration as follows: "The Plan was a factor in my decision to continue as CEO of NetApp until I met the age and years of service requirement to vest the lifetime medical benefits upon my retirement." Warmenhoven Decl. ¶ 6. Had Warmenhoven understood that NetApp could terminate the Plan at any time, he might have left NetApp earlier than 2014 and gone to work for another company. Instead, Warmenhoven stayed at NetApp under the mistaken impression that he and his wife would be provided lifetime health insurance benefits. *See id.* Since termination of the Plan, Warmenhoven has incurred more than $4,000 a year in out-of-pocket expenses to purchase replacement health insurance. *Id*. ¶ 10.

NetApp argues that those out-of-pocket expenses for replacement health insurance do not flow from NetApp's alleged misrepresentation that the Plan provided lifetime benefits, but rather from termination of the Plan, which was permitted. Whether those expenses are an appropriate measure of Warmenhoven's loss resulting from NetApp's alleged breach of fiduciary duty is an issue for another day. The question presented by the current motion is whether a reasonable trier of fact could find that NetApp's alleged misrepresentation regarding the Plan terms caused Warmenhoven actual harm that can be remedied by monetary compensation, *i.e.*, surcharge. The Court concludes that the answer to that question is yes.

In reaching this conclusion, the Court determines only that Warmenhoven may be entitled to surcharge as a remedy should he prove that NetApp breached its fiduciary duty by inaccurately representing that the Plan provided lifetime health insurance benefits that could not be terminated. Warmenhoven would have to prove that the alleged breach of fiduciary duty caused him actual harm, and he would have to prove what amount of money would compensate him for that harm using an appropriate damages model.

### 2. Unjust Enrichment

As noted above, "[a] trustee (or a fiduciary) who gains a benefit by breaching his or her

duty must return that benefit to the beneficiary." *Gabriel*, 773 F.3d at 958 (internal quotation marks and citation omitted). NetApp argues that there is no evidence that it gained a benefit by allegedly misrepresenting the Plan terms. Because Warmenhoven has the burden of proof at trial, NetApp may meet its initial burden on summary judgment by pointing to an absence of record evidence supporting surcharge under an unjust enrichment theory. *See In re Oracle Corp. Sec. Litig.*, 627 F.3d at 387 ("Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case."). In *Skinner*, the Ninth Circuit concluded that the plan participants were not entitled to surcharge under an unjust enrichment theory because they "presented no evidence that the committee gained a benefit by failing to ensure that participants received an accurate SPD." *Skinner*, 673 F.3d at 1167.

The Court finds that NetApp has met its initial burden to show that surcharge based on an unjust enrichment theory is not an appropriate equitable remedy in this case. The burden thus shifts to Warmenhoven to present evidence from which a reasonable trier of fact could find that NetApp gained a benefit from its alleged misrepresentation. Warmenhoven argues that "NetApp retained millions of dollars, per its SEC disclosures, when it terminated the Plan and avoided any future liability related to the [Plan]." Opp. at 5, ECF 139. Setting aside for the moment Warmenhoven's failure to cite to specific SEC filings showing NetApp's retention of millions of dollars, any such retention resulted from termination of the Plan, not the alleged misrepresentation that the Plan provided lifetime health insurance benefits. Termination of the Plan was permitted under the laws governing ERISA and under the express terms of the Plan. As in *Skinner*, Warmenhoven has failed to present any evidence that NetApp gained a benefit from the alleged conduct that breached its fiduciary duty, that is, the alleged misrepresentation that the Plan provided lifetime health insurance benefits that could not be terminated.

The Court therefore finds surcharge based on unjust enrichment is not an available remedy in this case. However, as discussed above, surcharge based on actual harm is may be available.

**C.     Conclusion**

NetApp seeks summary judgment on Warmenhoven's § 1132(a)(3) claim on the basis that

11

1 the two remedies he seeks, reformation and surcharge, are not appropriate equitable relief in this
2 case. NetApp's motion must be denied in light of the Court's conclusion that Warmenhoven may
3 be able to recover surcharge as an appropriate remedy for actual harm caused by NetApp's alleged
4 breach of fiduciary duty.

## IV. ORDER

(1) NetApp's motion for summary judgment is DENIED.

(2) This order terminates ECF 130.

Dated: November 16, 2022

_____
BETH LABSON FREEMAN
United States District Judge